1  **LUJAN & WOLFF LLP**
   Attorneys at Law
2  Suite 300, DNA Building
   238 Archbishop Flores Street
3  Hagåtña, Guam 96910
   Telephone: (671) 477-8064/5
4  Fascimile: (671) 477-5297 (LAWS)

5  *Attorneys for Plaintiff ACQ*

6          **IN THE UNITED STATES DISTRICT COURT**
                **FOR THE DISTRICT OF GUAM**
7
   ACQ,                                    CIVIL ACTION NO.
8
                    Plaintiff,
9
            v.                             **COMPLAINT**
10
   CAPUCHIN FRANCISCANS; CAPUCHIN
11 FRANCISCANS PROVINCE OF ST.
   MARY; CAPUCHIN FRANCISCANS            **JURY TRIAL DEMANDED**
12 CUSTODY OF STAR OF THE SEA;
   PEDRO QUIDACHAY, an individual; DOE
13 ENTITIES 1-5; and DOE-INDIVIDUALS 6-
   50, inclusive,
14
                    Defendants.
15

16
            Plaintiff ACQ ("ACQ") files this Complaint ("the Complaint") for damages based on prior
17
   sexual abuse against Capuchin Franciscans, Capuchin Franciscans Province of St. Mary,
18
   Capuchin Franciscans Custody of Star of the Sea, Pedro Quidachay, an individual, and DOES 1-
19
   50 ("Defendants").
20
                                  **I.**
21                     **JURISDICTION AND VENUE**

22
            1.  This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332
23
   because all parties are citizens of diverse states and the amount in controversy exceeds $75,000.00
24
   exclusive of interest, fees, and costs.
25
            2.  This Court has personal jurisdiction over this matter because Defendants purposefully
26
   availed themselves to the benefit of the laws of this judicial district by regularly transacting and/or
27
   conducting business in this state.
28

3. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and or a substantial part of property that is the subject of the action is situated.

## II.
## PARTIES

4. At all times relevant hereto, ACQ has been and is an individual who resides in Guam. When he was a minor boy, ACQ was an altar server and was sexually molested and abused by Pedro Quidachay, an adult serving as an Altar Server in charge of minor altar servers, and assisting Capuchin Priests assigned to serve the Archdiocese of Agana, and Capuchin Franciscans. ACQ is currently an adult. ACQ is identified throughout this complaint by his initials in order to protect his privacy.

5. At all times relevant hereto, and upon information and belief, Roman Catholic Archbishop of Agana, a corporation sole, in accordance with the discipline and government of the Roman Catholic Church, is the legal name for Archbishop of Agana, also known as Archdiocese of Agana ("Agana Archdiocese"), which is and has been at all times relevant hereto a non-profit corporation organized and existing under the laws of Guam, authorized to conduct business and conducting business in Guam, with its principal place of business in Guam. The Agana Archdiocese is an entity under the control of the Holy See, based in Vatican City, Rome, Italy. Agana Archdiocese is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein. In January 2019, Agana Archdiocese filed a bankruptcy action in the District Court of Guam and, therefore, ACQ has not named it as a defendant in this Complaint.

6. At all times relevant hereto, and upon information and belief, the Capuchin Franciscans, the Capuchin Franciscans Province of St. Mary, and the Capuchin Franciscans Vice Province Custody of Star of the Sea (collectively referred to herein as the "Capuchins"), are a religious order of priests, brothers, and friars, who serve various Catholic positions throughout the United States, including positions in Guam. In or about 1939, the Capuchin Franciscans began their missions on Guam. The Capuchin Franciscans are divided into geographic areas called

2

provinces, and Defendant Capuchin Franciscans Province of St. Mary, is one of those geographic areas, with its headquarters in the State of New York. In or about 1952, Guam was assigned to the Capuchin Franciscans Province of St. Mary. By the early 1980s, there were almost a dozen Chamorros (the indigenous people of Guam) in the Capuchin Franciscan Order, either as priests, brothers or friars. At all times relevant hereto, and upon information and belief, the Capuchin Franciscans Province of St. Mary, regularly assigned Capuchin Priests to Guam, and acted as an agent of the Capuchin Franciscans, whose main headquarters is in Rome, Italy, and the Capuchin Franciscans Province of St. Mary was under its direction, supervision, and jurisdiction. In or about 1982, the Capuchin Franciscans established the Guam community as the Star of the Sea, a Vice Province of the Capuchin Franciscans Province of St. Mary. Upon information and belief, the Capuchin Franciscans had authority and control over both the Capuchin Franciscans Province of St. Mary and Capuchin Franciscans Vice Province Custody of Star of the Sea, including Quidachay, an adult Lead Altar Server and the other Capuchin Priests, Brothers, and Friars in that province, and including other employees or agents who worked and/or resided in Santa Guadalupe Church, in Santa Rita, Guam. Upon further information and belief, the Capuchin defendants participated in, if not directly and assigned Quidachay to serve the Agana Archdiocese in Guam ("Santa Rita Parish"), and the Capuchin defendants materially benefited from those assignments. The Capuchins are responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein.

7. Upon information and belief, the Agana Archdiocese and Capuchins had joint responsibility (including but not limited to the spiritual care) for parishes on Guam, including the Santa Rita Parish, during all relevant times.

8. At all times relevant hereto, Quidachay, was an individual and an agent of both the Agana Archdiocese and the Capuchins, specifically as Lead Altar Server assigned to the Santa Rita Parish. At all times relevant hereto, Quidachay was a resident of Guam and is responsible and liable in whole or in part, directly or indirectly, for the wrongful acts complained of herein. Quidachay was under the supervision of Father Mel, a Capuchin Priest.

3

9. Defendant-entities named herein as DOES 1-5, inclusive, are or at all times relevant hereto, were insurance companies that provided general liability coverage and/or excess level liability coverage pursuant to policies issued to the Capuchins and/or Roman Catholic Church of Guam. Defendant-individuals named here-in as DOES 6-50, inclusive, are at all times relevant hereto, were agents, employees, representatives and/or affiliated entities of the Capuchins and/or Roman Catholic Church outside of Guam whose true names and capacities are unknown to ACQ who therefore sues such defendants by such fictitious names, and who will amend the Complaint to show the true names and capacities of each such Doe defendant when ascertained. DOES 6-50 assisted, aided and abetted and/or conspired with Quidachay, and/or other members of the Agana Archdiocese and/or the Capuchins to conceal, disguise, cover up, and/or promote the wrongful acts complained of herein. As such, each such Doe is legally responsible in some manner for the events, happenings, and/or tortious and unlawful conduct that caused the injuries and damages alleged in this Complaint.

10. Each defendant is the agent, servant and/or employee of other defendants, and each defendant was acting within the course and scope of his, her, or its authority as an agent, servant and/or employee of the other defendants. Defendants, and each of them, are individuals, corporations, alter egos and partnerships of each other and other entities which engaged in, joined in and conspired with the other wrongdoers in carrying out the tortious and unlawful activities described in this Complaint; and defendants, each of them, ratified the acts of the other defendants as described in this Complaint.

11. At all times ACQ was sexually abused by Quidachay, Defendants knew or should have known that Quidachay posed a threat of foreseeable harm to ACQ and other children, but they failed to take reasonable steps to protect ACQ from that harm.

4

### III.
### INTRODUCTORY ALLEGATIONS

A. **Culture of Sexually Predatory Behavior**

      12.  Since the inception of the priesthood, brotherhood or Altar Boys many centuries ago, becoming a Catholic priest, brother or altar server has required numerous vows to be taken among them a vow of obedience to the laws of both God and society, and a variety of responsibilities that elevated priests, brothers, nuns, altar servers and entities that utilized the services of catholic clergy and assistants, to a high status in the community, which has induced parents to entrust their children to the care of priests, brothers, adult altar servers and likewise induced children to submit to the commands and will of the same.

      13.  The creation of the ritual of altar boy service as a component of the Catholic mass and other religious services with the Catholic Church, if not originally conceived as such, ultimately became a tool by which sexually predatory priest or brother or adult altar server would gain access to young boys and such access was disguised in the form of privileged opportunities by which the church invited certain young boys to serve as altar boys, an opportunity that was viewed as a respectable and distinguished role for a young boy in the community and gave a boy the status of wearing liturgical apparel during church services and working side by side with the priests or brothers.

      14.  Further disguising the scheme to have sexual access to young boys was the ritual of requiring altar boys to spend the night at the church rectory, ostensibly to facilitate preparation for the following morning church services. By presenting the overnight requests in this manner, priests and adult lead altar servers routinely gained the approval of parents; and oftentimes the sexual abuses occurred during the night in their beds at the priests' residences. These seemingly routine practices of having altar boys stay overnight served the predatory priests and adult altar servers with a steady supply of victims under the auspices and pretense of formal church protocol, which allowed the Church to continually operate a veritable harem of young boys who were readily available to pedophiles who utilized the stature of the church into deceiving the community to regard them as high-level officials.

5

15. The systematic and ongoing pattern of sexual abuse of young children was characteristic of an internal society within the Agana Archdiocese and Capuchins and whose norms were based on pedophilic conduct disguised by the rituals and pageantry of liturgical services, together with the aura of prestige that was inculcated in the community and which caused Catholic parishioners to place the highest level of confidence and trust in the church and its clergy and support staff. This internal society of sexual corruption sustained itself through a conspiratorial arrangement between priests, brothers, adult altar servers, and other officials in the Agana Archdiocese and Capuchins whereby they all understood and agreed to remain quiet about each other's sexual abuse misconduct, to tolerate such misconduct, and to withhold information about such misconduct from third parties including victim's parents or guardians and law enforcement authorities, all in order to protect the offenders and the Agana Archdiocese and Capuchins, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

16. These sexually predatory norms were an integral part of the standards and culture generated by the central authority of the Roman Catholic Church based in Vatican City, Italy, which closely controlled the operations of the Agana Archdiocese and Capuchins, and which aided and abetted such sexually predatory and abusive practices by priests, brothers, and adult altar servers by knowingly tolerating such actions, failing to manage the Agana Archdiocese and Capuchins to prevent sexual misconduct, and engaging in actions to protect and shield priests, brothers and adult altar servers through such policies as transfers to other jurisdictions, maintaining an internal code of silence, and choosing to remain willfully blind to the ongoing sexual misconduct committed by Catholic priests and adult altar servers.

17. These sexually predatory norms were also an integral part of the long-term relationship between the Agana Archdiocese and the Capuchins which fostered an environment conducive to the sexual abuse of young boys on Guam and exploited the trust placed in the church by the community of Guam, while the Agana Archdiocese and the Capuchins tolerated and remained willfully blind to the rampant sexual abuse that was perpetrated on an ongoing basis.

6

**B. Sexual Abuse Inflicted on ACQ**

18. In or about 1955-1957, ACQ between the ages of ten (10) –twelve (12) years, ACQ was an altar boy at the Santa Guadalupe Church in Santa Rita. During this time period or a portion of, Father Mel was the assigned priest. Defendant Quidachay was an adult and the leader of the altar servers, who worked, assisted, and was supervised by Fr. Mel, and whose job or task was to train and supervise the younger altar servers.

19. During the two (2) – three (3) years period that Quidachay abused ACQ, the abuses occurred at both the Santa Guadalupe Church premises and the surrounding jungle. Quidachy lured and enticed ACQ with offers of candies, fruits, soda's, and other sundries.

20. On over one hundred (100) occasions, both on Church and/or jungle grounds, Quidachay fondled, masturbated, performed oral sex, and sexual anal penetration both digitally and penis-wise.

21. On many occasions, separate from what is stated in Paragraph 20, Quidachay trained ACQ to fondle and masturbate Quidachay's penis, to perform fellatio on Quidachay, and to swallow Quidachay's sperm, and to digitally penetrate Quidachay anus, and to lick Quidachay's anus.

22. Around the age of twelve (12) years, ACQ got tired of Quidachay's abuses, and distanced himself from Quidachay.

23. Upon information and belief, other priests and representatives of the Capuchins and the Agana Archdiocese, including other individuals named herein as Doe defendants, were aware of the sexual abuse committed by Quidachay and deliberately remained quiet and withheld such information from third parties including victim's parents or guardians and law enforcements authorities, in order to protect Quidachay, the Agana Archdiocese and the Capuchins, thereby placing their loyalty above their duty to protect the minor children and their legal responsibilities.

24. At all times relevant hereto, Quidachay sexually abused and molested ACQ when ACQ was a minor and committed such acts while serving as an adult altar server under Capuchin superiors and/or employee, worker, and/or resident in the Santa Rita Parish, in his capacity as an

1  agent and employee of the Agana Archdiocese and the Capuchins, which are vicariously liable for
2  their actions.

3      25. The Agana Archdiocese, Capuchins, and DOES 1-50, inclusive, knew that Quidachay
4  had sexually abused and molested ACQ, and rather than reporting the matter to law enforcement
5  and without intervening so as to prevent Quidachay from engaging in additional instances of
6  sexual abuse, and without seeking to have Quidachay acknowledge and take responsibility for his
7  wrongful actions, they assisted Quidachay with the specific purpose or design to keep
8  Quidachay's misconduct hidden and secret; to hinder or prevent Quidachay's apprehension and
9  prosecution; and to protect the Capuchins, Agana Archdiocese, as well as the Roman Catholic
10  church as an international institution.

11      26. To this day, the Agana Archdiocese, Capuchins, and DOES 1-50 have never contacted
12  ACQ, ACQ's family, or children they know Quidachay had sexual contact or sexual conduct
13  with. The Agana Archdiocese, Capuchins, and DOES 1-50 have been content that any other
14  children that were sexually abused by Quidachay while he was serving as a Capuchin Lead Altar
15  Server, while he was serving as an employee, worker, volunteer and resident adult altar server at
16  the Santa Rita Parish, will remain affected by guilt, shame and emotional distress.

17      27. The criminal offense of Child Abuse is defined in 9 GCA § 31.30, which states in
18  pertinent part as follows:

19          (a) A person is guilty of child abuse when:
                (1)    he subjects a child to cruel mistreatment; or
20              (2)    having a child in his care or custody or under his control, he:
                              *        *        *
21              (B) subjects that child to cruel mistreatment; or
                (C) unreasonably causes or permits the physical or,
22                  emotional health of that child to be endangered.

23      28. Under 19 GCA § 13101, the following relevant definitions are provided:

24                              *        *        *
          (b) Abused or neglected child means a child whose physical or mental
25              health or welfare is harmed or threatened with harm by the acts or
                omissions of the person(s) responsible for the child's welfare;
26                              *        *        *
          (d) Child means a person under the age of 18 years;
27                              *        *        *
          (t) Harm to a child's physical health or welfare occurs in a case where
28              there exists evidence of injury, including but not limited to:
                              *        *        *

8

(2) Any case where the child has been the victim of a sexual offense as defined in the Criminal and Correctional Code; or

(3) Any case where there exists injury to the psychological capacity of a child such as failure to thrive, extreme mental distress, or gross emotional or verbal degradation as is evidenced by an observable and substantial impairment in the child's ability to function within a normal range of performance with due regard to the child's culture(.)

29. Under 9 GCA § 25A201, "sexual conduct" with a minor is defined as follows:

(o) Sexual Conduct means acts of sexual penetration, sexual contact, masturbation, bestiality, sexual penetration, deviate sexual intercourse, sadomasochistic abuse, or lascivious exhibition of the genital or pubic area of a minor.

30. Under 9 GCA § 25.10(a)(8), "sexual contact" is defined as follows:

(8) Sexual Contact includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification.

31. Under 9 GCA § 25.20, the crime of Second Degree Criminal Sexual Misconduct with regard to a child is set forth in pertinent part as follows:

(a) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
(1) that other person is under fourteen (14) years of age;
(2) that other person is at least fourteen (14) but less than sixteen (16) years of age and the actor is a member of the same household as the victim, or is related by blood or affinity to the fourth degree to the victim, or is in a position of authority over the victim and the actor used this authority to coerce the victim to submit.

32. Under 9 GCA § 25.30, the crime of Fourth Degree Criminal Sexual Misconduct is set forth in pertinent part as follows:

(a) A person is guilty of criminal sexual conduct in the fourth degree if he or she engages in sexual contact with another person and if either of the following circumstances exists:
(1) force or coercion is used to accomplish the sexual contact;
(2) the actor knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

9

33. Under 19 GCA § 13201(b), the following are required to report child abuse:

> (b) Persons required to report suspected child abuse under Subsection (a) include, but are not limited to, … clergy member of any religious faith, or other similar functionary or employee of any church, place of worship, or other religious organization whose primary duties consist of teaching, spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship, ….

## IV.
## FIRST CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendant Quidachay]

34. ACQ re-alleges and incorporates by reference paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. Quidachay committed the offense of Second Degree Criminal Sexual Misconduct, as set forth in 9 GCA § 25.20, by engaging in sexual contact with ACQ when ACQ was under fourteen (14) years of age.

36. Quidachay also committed the offense of Child Abuse, as set forth in 9 GCA § 31.30, by subjecting ACQ, who was a child at the time pursuant to 19 GCA § 13101(d) and was under the care, custody or control of Quidachay, to cruel mistreatment and unreasonably causing or permitting the physical or emotional health of ACQ to be endangered.

37. As a direct and proximate consequence of Quidachay's misconduct, ACQ was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Quidachay, who was responsible for the child's welfare.  Moreover, as Quidachay's misconduct constitutes the commission of one or more criminal offenses, ACQ  has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because ACQ  was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA).

38. As a direct and proximate consequence of Quidachay's misconduct, in his position as an adult altar server under the control and supervision of a Capuchin Priest, ACQ has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation,

10

1  and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical

2  and psychological treatment, therapy and counseling.

3      39. By engaging in the conduct described herein, Quidachay acted with malice,

4  oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

## V.
## SECOND CAUSE OF ACTION

**Child Sexual Battery**
**[Against Defendant Quidachay]**

9      40. ACQ re-alleges and incorporates by reference paragraphs 1 through 39 of this

10  Complaint as if fully set forth herein.

11      41. The acts of sexual abuse by Quidachay heretofore described were done with the

12  intention to cause a harmful or offensive contact with ACQ's person.

13      42. As a direct or indirect result of Quidachay's acts, a harmful or offensive contact

14  occurred with ACQ's person.

15      43. ACQ did not consent to the harmful or offensive contact by Quidachay.

16      44. The harmful or offensive contact by Quidachay caused injury, damage, loss, and harm

17  to ACQ, including but not limited to great pain of mind and body, shock, emotional distress,

18  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

19  humiliation, and loss of enjoyment of life; and ACQ has incurred and/or will continue to incur

20  expenses for medical and psychological treatment, therapy, and counseling.

21      45. As a direct and proximate result of the harmful or offensive contact, ACQ suffered

22  general and special damages.

23      46. By engaging in the conduct described herein, Quidachay acted with malice,

24  oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

# VI.
## THIRD CAUSE OF ACTION

### Child Sexual Assault
### [Against Defendant Quidachay]

47. ACQ re-alleges and incorporates by reference paragraphs 1 through 46 of this Complaint as if fully set forth herein.

48. By engaging in the conduct heretofore described, Quidachay demonstrated an unlawful intent to inflict an immediate injury on the person of ACQ then present.

49. Quidachay's conduct caused ACQ to be in fear of personal harm, including sexual abuse.

50. As a direct and proximate result of Quidachay's sexual assault, ACQ suffered general and special damages.

51. By engaging in the conduct described herein, Quidachay acted with malice, oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

# VII.
## FOURTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress
### [Against Defendant Quidachay]

52. ACQ re-alleges and incorporates by reference paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. Quidachay's acts and conduct in sexually abusing ACQ were extreme and outrageous.

54. By engaging in such acts and conduct, Quidachay intended to cause, or had reckless disregard of the probability of causing, ACQ to suffer severe emotional distress, including but not limited to great pain of mind and body, shock, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

55. As an actual and proximate result of Quidachay's extreme and outrageous acts and conduct, ACQ suffered and continues to suffer severe emotional distress.

56. As a direct and proximate result of Quidachay's acts and conduct, ACQ suffered general and special damages.

12

57. By engaging in the conduct described herein, Quidachay acted with malice, oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

## VIII.
## FIFTH CAUSE OF ACTION

### Child Sexual Abuse
### [Against Defendants Capuchins and DOES 1–50]

58. ACQ re-alleges and incorporates by reference paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. Defendants Capuchins and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) are vicariously liable for the sexual abuse committed upon ACQ by Quidachay. Public policy dictates that Defendants should be held responsible for Quidachay's wrongful conduct under the theory commonly referred to as *Respondeat Superior*.

60. As a direct and proximate consequence of Quidachay's misconduct, ACQ was an abused or neglected child within the meaning of 19 GCA § 13101(b) because his physical or mental health or welfare was and continues to be harmed by the acts or omissions of Quidachay, who was responsible for the child's welfare. Moreover, as Quidachay's misconduct constitutes the commission of one or more criminal offense, ACQ has suffered harm to a child's physical health or welfare within the meaning of 19 GCA § 13101(t)(2) because ACQ was the victim of a sexual offense as defined in the Criminal and Correctional Code (9 GCA).

61. For the reasons set forth in the incorporated paragraphs of this Complaint, the sexual abuse of ACQ arose from and was incidental to Quidachay's agency and employment with, or service on behalf of the Defendants, and while Quidachay was acting within the scope of his agency and employment with the Defendants at the time they committed the acts of sexual abuse, which were foreseeable to Defendants.

62. Defendants ratified and/or approved of Quidachay's sexual abuse by failing to adequately investigate, discharge, discipline and/or supervise Quidachay, and other priests, brothers, employees, adult altar servers, servants, officers, volunteers, and/or agents known by Defendants to have sexually abused children, or to have been accused of sexually abusing children; by concealing evidence of Quidachay's sexual abuse; by failing to intervene to prevent

13

1   ongoing and/or further sexual abuse; by failing to report the sexual abuse as required under 19

2   GCA § 13201(b); by allowing Quidachay to continue in service as Catholic Capuchin employees,

3   workers, residents, adult altar server and/or other agents working for the Agana Archdiocese and

4   Capuchins.

5       63.  Despite the pretense of policies and procedures to investigate and address instances of

6   child sexual abuse by priests, brothers, employees, workers, and/or agents working for the Agana

7   Archdiocese and Capuchins, Defendants in fact implemented such policies and procedures for no

8   other purpose than to avoid scandal, maintain secrecy and preserve loyalty to fellow clergy,

9   brothers, employees, workers, or other agents of the Agana Archdiocese and Capuchins, rather

10  than the protection of children.  Such hypocritical conduct by Defendants has served to

11  systematically encourage, perpetuate and promote sexually abusive conduct by priests, brothers,

12  adult altar servers, employees, workers, or other agents of the Agana Archdiocese and Capuchins.

13      64.  The Agana Archdiocese and Defendants either had actual knowledge of Quidachay's

14  sexual abuse of ACQ and numerous other minors whom Quidachay victimized, or could have and

15  should have reasonably foreseen that Quidachay was committing and would commit sexual abuse

16  of ACQ and other minors, in the course of their agency and employment as Capuchin, adult altar

17  server, employees, workers, residents, or other agents at the Santa Rita Parish.

18      65.  As a direct and proximate result of the Defendants' above–described conduct, ACQ

19  has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress,

20  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,

21  humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses

22  for medical and psychological treatment, therapy and counseling.

23      66.  By engaging in the conduct described herein, Defendants acted with malice,

24  oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

25

26

27

28

14

# IX.
## SIXTH CAUSE OF ACTION

### Negligence
### [Against All Defendants]

67. ACQ re-alleges and incorporates by reference paragraphs 1 through 66 of this Complaint as if fully set forth herein.

68. Defendants Quidachay, Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty to protect ACQ when he was entrusted to Quidachay's care by ACQ's parents and/or guardians. ACQ's care, welfare, and/or physical custody were temporarily entrusted to Defendants, and Defendants accepted the entrusted care of ACQ as such, Defendants owed ACQ, as a child at the time, a special duty of care, in addition to a duty of ordinary care, and owed ACQ the higher duty of care that adults dealing with children owe to protect them from harm.

69. By virtue of their unique authority and positions as a Roman Catholic Capuchin Order and adult altar server, employee, worker, resident, or other agent at the Santa Rita Parish, Quidachay was able to identify vulnerable victims and their families upon which they could perform such sexual abuse; to manipulate their authority to procure compliance with their sexual demands from victims; to induce the victims to continue to allow the abuse; and to coerce them not to report it to any other persons or authorities. As a Capuchin adult altar server or employee, worker, resident, or other agent at the Santa Rita Parish, Quidachay had unique access to a position of authority within Roman Catholic families like the family of ACQ. Such access, authority and reverence were known to the Defendants and encouraged by them.

70. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Quidachay's sexually abusive and exploitative propensities and/or that Quidachay was an unfit agent. It was foreseeable that if Defendants did not adequately exercise or provide the duty of care owed to children in their care, including but not limited to ACQ, the children entrusted to Defendants' care would be vulnerable to sexual abuse by Quidachay.

71. Defendants breached their duty of care to the minor ACQ by allowing Quidachay to be in the company of minor children, including ACQ, without supervision; by failing to

15

adequately supervise, or negligently retaining Quidachay whom they permitted and enabled to have access to ACQ; by failing to properly investigate; by failing to inform or concealing from ACQ, ACQ's parents, guardians, or law enforcement officials that Quidachay was or may have been sexually abusing minors; by failing to provide a safe environment; by holding out Quidachay to ACQ, ACQ's parents or guardians, and to the community of Guam at large, as being in good standing and trustworthy as a person of stature and integrity. Defendants cloaked within the facade of normalcy Quidachay's contact with ACQ and/or with other minors who were victims of Quidachay and deliberately concealed and disguised the sexual abuse committed by Quidachay.

72. As a direct and proximate result of the Defendants' above–described conduct, ACQ has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

73. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

## SEVENTH CAUSE OF ACTION

### Negligent Supervision
### [Against Defendants Capuchins and DOES 1–50]

74. ACQ re-alleges and incorporates by reference paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. Defendants Capuchins, and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty to provide reasonable supervision of Quidachay and minor child, ACQ; to use reasonable care in investigating Quidachay; and to provide adequate warning to ACQ and ACQ's family, and to families of other children who were entrusted to Quidachay, of Quidachay's sexually abusive and exploitative propensities and unfitness.

76. Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Quidachay's sexually abusive and exploitative propensities and/or that Quidachay was an unfit agents. Despite such knowledge, Defendants negligently failed to supervise Quidachay in his position of trust and authority as a Capuchin adult altar server, or

16

employee, worker, resident, or other agent at the Santa Rita Parish, where he was able to commit the wrongful acts against ACQ alleged herein. Defendants failed to provide reasonable supervision of Quidachay, failed to use reasonable care in investigating Quidachay, and failed to provide adequate warning to ACQ and ACQ's family regarding Quidachay's sexually abusive and exploitative propensities and unfitness. Defendants further failed to take reasonable measures to prevent future sexual abuse.

77.  As a direct and proximate result of the Defendants' above–described conduct, ACQ has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

78.  By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

### XI.
### EIGHTH CAUSE OF ACTION

**Negligent Hiring And Retention**
**[Against Defendants Capuchins and DOES 1– 50]**

79.  ACQ re-alleges and incorporates by reference paragraphs 1 through 78 of this Complaint as if fully set forth herein.

80.  Defendants Capuchins and DOES 1-50 (collectively "Defendants" as alleged in this cause of action) had a duty not to hire and/or retain Quidachay in light of his sexually abusive and exploitative propensities.

81.  Defendants, by and through their agents, servants and employees, knew or reasonably should have known of Quidachay's sexually abusive and exploitative propensities and/or that Quidachay was an unfit agent. Despite such knowledge and/or an opportunity to learn of Quidachay's  misconduct, Defendants negligently hired and retained Quidachay in his position of trust and authority as a Capuchin adult altar server, or employee, worker, resident, or other agent at the Santa Rita Parish, where he was able to commit the wrongful acts against ACQ alleged

17

herein. Defendants failed to properly evaluate Quidachay's application for employment by failing to conduct necessary screening; failed to properly evaluate Quidachay's conduct and performance as an employee of Defendants; and failed to exercise the due diligence incumbent upon employers to investigate employee misconduct, or to take appropriate disciplinary action, including immediate termination and reporting and referral of Quidachay's sexual abuse to appropriate authorities. Defendants negligently continued to retain Quidachay in service as a Capuchin adult altar server or employee, worker, resident, or other agent at the Santa Rita Parish, working for Defendants, which enabled him to continue engaging in the sexually abusive and predatory behavior described herein.

82. As a direct and proximate result of the Defendants' above–described conduct, ACQ has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses for medical and psychological treatment, therapy and counseling.

83. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

**XII.**
**NINTH CAUSE OF ACTION**

**Breach of Fiduciary Duty And/Or Confidential Relationship**
**[Against All Defendants]**

84. ACQ re-alleges and incorporates by reference paragraphs 1 through 83 of this Complaint as if fully set forth herein.

85. By holding Quidachay out as a qualified Capuchin Adult Altar Server, or employee, worker, resident, or other agent at the Santa Rita Parish, and as person of stature and integrity within the Catholic Archdiocese, Defendants Capuchins, and DOES 1-50, together with Quidachay himself, invited, counseled, encouraged and induced the Catholic community of Guam, including children and parents or guardians of children, and particularly parents or guardians of children who were parishioners and members of the Catholic church volunteering

18

1  their services, to have trust and confidence in the Agana Archdiocese, the Capuchins, and their
2  priests, brothers, adult altar server or employees, workers, residents, or other agents at the Santa
3  Rita Parish, and to entrust their children to the company of priests and/or brothers or employees,
4  workers, residents, or other agents at the Santa Rita Parish, and specifically to Quidachay,
5  including allowing their children to be alone with Quidachay without supervision.  Through such
6  actions, Defendants collectively created and entered into a fiduciary and/or confidential
7  relationship with its parishioners, including Catholic parents or guardians and their children, and
8  in particular, children who provided services to the Agana Archdiocese and the Capuchins.
9  Accordingly, Defendants collectively created and entered into a fiduciary and/or confidential
10  relationship specifically with the minor child ACQ.

11  86. Through such fiduciary and/or confidential relationship, Defendants collectively
12  caused parents or guardians to entrust their children to priests, brothers, adult altar servers or
13  employees, workers, residents, or other agents at the Santa Rita Parish, and specifically to
14  Quidachay, including the parents of ACQ, resulting in the subject acts of sexual abuse described
15  herein.

16  87. Defendants collectively breached their fiduciary and/or confidential relationship with
17  the minor child ACQ by violating the trust and confidence placed in them by parishioners and
18  specifically by the minor child ACQ, and by engaging in the wrongful acts described in this
19  Complaint.

20  88. As a direct and proximate result of the Defendants' above–described conduct, ACQ
21  has suffered, and continues to suffer, great pain of mind and body, shock, emotional distress,
22  physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace,
23  humiliation, and loss of enjoyment of life; and has incurred and/or will continue to incur expenses
24  for medical and psychological treatment, therapy and counseling.

25  89. By engaging in the conduct described herein, Defendants acted with malice,
26  oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

27
28

19

# XIII.
## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress
### [Against All Defendants]

90. ACQ re-alleges and incorporates by reference paragraphs 1 through 89 of this Complaint as if fully set forth herein.

91. The acts and conduct of the Defendants in providing Quidachay, sexual predators to children, with direct access to children including ACQ, and refusing to report or stop his sexual abuses, were extreme and outrageous. Further, Quidachay's acts of sexual abuse of ACQ was extreme and outrageous.

92. By engaging in such acts and conduct, Defendants intended to cause, or had reckless disregard of the probability of causing ACQ to suffer severe emotional distress, including but not limited to great pain of mind and body, shock, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

93. As an actual and proximate result of this extreme and outrageous acts and conduct, ACQ was sexually abused and suffered and continues to suffer severe emotional distress.

94. As a direct and proximate result of these acts and conduct, ACQ suffered general and special damages.

95. By engaging in the conduct described herein, Defendants acted with malice, oppression, and/or fraud, entitling ACQ to exemplary and punitive damages.

# XIV.
## REQUEST FOR RELIEF

WHEREFORE, ACQ requests judgment against all Defendants on all counts as follows:

1. For all general, special, exemplary and punitive damages, as allowed by law in a sum to be proven at trial and in an amount not less than $5,000,000;

2. For costs and fees incurred herein;

3. Attorneys' fees, as permitted by law; and

4. For other such and further relief as the Court may deem just and proper.

20

## XV.
## DEMAND FOR JURY TRIAL

Plaintiff ACQ, through his counsel, hereby demands a jury trial of six (6) in the above-entitled action, pursuant to Federal Rule of Civil Procedure 48(a).

Respectfully submitted this 27th day of November, 2019.

**LUJAN & WOLFF** LLP

By: _____/s/_____

**DELIA LUJAN WOLFF**
*Attorneys for Plaintiff ACQ*

21

## **VERIFICATION**

ACQ declares and states that he is the Plaintiff in the foregoing COMPLAINT; that he has read said COMPLAINT and knows the contents thereof to be true and correct, except as to the matters which may have been stated upon his information and belief; and as to those matters, he believes them to be true.

I declare under penalty of perjury under the laws of the United States, this 27th day of November, 2019, that the foregoing is true and correct to the best of my knowledge.

_____
ACQ